**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ PLLC**
1673 W. Shoreline Drive, Suite 200 [83702]
P.O. Box 7808
Boise, ID 83707-7808
Telephone: (208) 489-8989
Facsimile: (208) 489-8988
Email: eric@jonesandswartzlaw.com

**Attorneys for Plaintiffs, Cassandra Danielson**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| CASSANDRA DANIELSON, Individually, and as Parent and Natural Guardian of HER Minor Child, P.E.,<br><br>Plaintiffs,<br><br>vs.<br><br>PFIZER, INC.; and WYETH PHARMACEUTICALS, INC.,<br><br>Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Comes now Plaintiff Cassandra Danielson, individually and as mother and natural guardian of Minor Plaintiff, P.E. (hereinafter referred to as "Plaintiffs"), residing at 863 Coachman Drive, Idaho Falls, Idaho 83402, by and through their undersigned counsel, and hereby submit this complaint for causes of action against Wyeth Pharmaceuticals, Inc. ("Wyeth") and Pfizer, Inc. ("Pfizer") (hereinafter collectively referred to as "Defendants") and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action for personal injury, statutory and compensatory damages as a result of Defendants' concealment of risks associated with its drug PRISTIQ® and/or desvenlafaxine (hereinafter collectively referred to as "Pristiq") as well as damages relating to Defendants' design, manufacture, sale, testing marketing, advertising, promotion, and/or distribution of the unsafe drug Pristiq.

2. Plaintiffs maintain that the pharmaceutical drug Pristiq is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper warnings as to the dangers associated with its use.

## JURISDICTION AND VENUE

3. This is an action for damages in excess of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court under 28 U.S.C. §1391 because at all times relevant to this complaint, Wyeth and Pfizer have engaged in continual business within this District, and a substantial part of the acts and/or omissions giving rise to Plaintiffs' claims occurred within this District.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 as complete diversity exists between Plaintiffs and Defendants. Defendant Wyeth is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania; therefore, Wyeth is a citizen of Delaware and Pennsylvania under 28 U.S.C. §1332(c)(1). Defendant Pfizer is incorporated under the laws of Delaware and has its principal place of business in New York. Therefore, Pfizer is a citizen of Delaware and New York under 28 U.S.C. §1332(c)(1). Plaintiffs are citizens of Idaho under 28 U.S.C. §1332(c)(2).

## PARTIES

6. Plaintiffs were at all relevant times residents of the state of Idaho. Mother Plaintiff, Cassandra Danielson, lawfully used and/or was exposed to Pristiq for the treatment and/or prevention of depression.

7. Minor Plaintiff, P.E., was born on June 21, 2012, with right coronal synostosis with plagiocephaly, also referred to herein as a skull malformation, as a result of Mother Plaintiff's use of Pristiq. As a result of her injuries, Minor Plaintiff, P.E., must undergo major reconstructive surgeries and procedures due to her skull malformation.

8. Mother Plaintiff, Cassandra Danielson, is a competent adult and the biological parent of Minor Plaintiff, P.E.. She brings this action individually and on behalf of P.E. to recover medical and other expenses related to the treatment resulting from Minor Plaintiff, P.E.'s birth defect(s), disorder(s) and/or related illness for general and special damages, including punitive damages; and for such other relief as requested herein for injuries suffered as a direct result of Mother Plaintiff's ingestion of Pristiq.

9. Defendant Wyeth is a corporation organized under the laws of the State of Delaware, with its registered agent's office address at 555 E. Lancaster Avenue, St. Davids, Pennsylvania 19087. Upon information and belief, prior to Wyeth's purchase by Pfizer in October 2009, Pennsylvania was the nerve center of Wyeth's business as it is the site of the corporation's headquarters and the place where the corporation's officers direct, control, and coordinate the corporation's activities. Upon information and belief, Wyeth was purchased by Pfizer in October of 2009. Wyeth Pharmaceuticals, Inc. is now a subsidiary of Pfizer, Inc., and is located in Philadelphia, Pennsylvania.

10. Defendant Pfizer, Inc., was and is a corporation organized under the laws of the State of Delaware, with its principal place of business in the New York City, New York. Pfizer's subsidiary, Wyeth Pharmaceuticals, Inc., is located in Philadelphia, Pennsylvania.

11. At all relevant times herein, Defendants were authorized to and regularly conducted business within the state of Idaho and continue to do so.

12. At all relevant times, Defendants, through their agents, servants, employees and apparent agents, were the designers, manufacturers, labelers, promoters, marketers, distributors, suppliers and sellers of Pristiq.

13. Defendants, either directly or through their agents, apparent agents, servants or employees, at all relevant times sold and/or distributed Pristiq in the state of Idaho and throughout the United States.

14. Defendants derive substantial revenue from pharmaceutical products used, sold, marketed, distributed, and/or consumed within the state of Idaho and expected, or should have expected, that their business activities could or would have consequences within the state of Idaho.

15. Defendants placed Pristiq into the stream of worldwide commerce and interstate commerce in the United States and in the state of Idaho. They did so without adequate testing and with inadequate or no warning that the use of the drug during pregnancy carried with it a risk of causing and/or developing congenital birth defects. It also did so without adequate instructions regarding the appropriate duration of use for Pristiq.

**SUMMARY OF THE CASE**

16. As a result of the defective nature of Pristiq and as a direct and proximate result of Defendants' conduct as set forth in this complaint, persons who were prescribed and ingested

Pristiq during pregnancy, including Mother Plaintiff, gave birth to children who suffered from birth defects, including Minor Plaintiff, P.E..

17. Minor Plaintiff, P.E.'s injuries were a foreseeable, direct, and proximate result of Defendants' acts and/or omissions, including but not limited to dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, physicians, Mother Plaintiff's physicians and pharmacists, and Mother Plaintiff.

18. Minor Plaintiff, P.E., suffered injuries as a direct result of Mother Plaintiff's ingestion of Pristiq during her pregnancy in a manner and dosage recommended by Defendants and as prescribed by Mother Plaintiff's treating physician.

19. Prior to Mother Plaintiff becoming pregnant, Defendants knew or should have known that children were being born with congenital birth defects, including but not limited to heart defects, to women who took Pristiq during pregnancy.

20. Prior to Mother Plaintiff becoming pregnant, Defendants knew or should have known that a mother's ingestion of Pristiq during pregnancy poses serious risks to her developing fetus. Defendants knew or should have known that Pristiq crosses the placenta, which presents serious implications for the developing fetus.

21. Prior to the time that Mother Plaintiff ingested Pristiq during pregnancy, Defendants knew or should have known that Pristiq posed an increased risk of congenital birth defects.

22. Prior to Mother Plaintiff's pregnancy, Defendants had the knowledge, the means, and the duty to provide the medical community and the consuming public with stronger warnings regarding the association between Pristiq and congenital birth defects, such as limb malformations, cleft palate, cleft lip, heart defects, PPHN and other related conditions, through

all means necessary, including but not limited to labeling, continuing education, symposiums, posters, sales calls to doctors, advertisements and promotional materials. Defendants, their agents, employees and servants, breached this duty.

23. Defendants concealed their knowledge of the dangerous side effects of Pristiq from Plaintiffs, Mother Plaintiff's physician, other consumers and the medical community.

24. Mother Plaintiff and/or Mother Plaintiff's physician(s)relied upon the fact that any birth defects and other serious pregnancy issues associated with the use of Pristiq would have been listed or emphasized on the Pristiq monograph and/or drug information as a basis to believe that Pristiq was safe for use during her pregnancy and would not cause birth defects.

25. Defendants have yet to adequately inform consumers and the prescribing medical community about the well-established risks of Pristiq use during pregnancy.

26. Defendants failed to conduct adequate and sufficient post-marketing surveillance of Pristiq after it began marketing, advertising, distributing and selling Pristiq.

27. Despite the exercise of reasonable diligence in investigating the cause of the injuries, including consultations with medical providers, the Plaintiffs were not told that Pristiq could have caused the Minor Plaintiff's injuries. Nor did the Plaintiffs see or read any information suggesting Pristiq caused the Minor Plaintiff's injuries until a date within the applicable statute of limitations for filing Plaintiffs' claims.

28. Had Mother Plaintiff been adequately warned that Pristiq could cause birth defects if ingested during pregnancy, she would not have taken the drug.

29. The defects suffered by Minor Plaintiff, which have caused and will continue to cause Plaintiffs various injuries and damages, are a direct result of Mother Plaintiff's ingestion of Pristiq during her pregnancy.

30. Plaintiffs accordingly seek compensatory damages and statutory damages, and any other damages permitted under 28 U.S.C. §1332 or, alternatively, the statutory and common law of the State of Idaho.

## FACTUAL BACKGROUND

31. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

32. The drug "desvenlafaxine" was advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packed, produced, promoted, processed, researched, sold, and tested by Defendants, their predecessors in interest and their subsidiaries, under the trade name Pristiq® and is a member of a class of drugs known as "serotonin and norepinephrine reuptake inhibitors" or "SNRIs." Pristiq was first approved for use in the United States by the FDA on or about February 29, 2008, for the treatment of major depressive disorder (MMD). Pristiq has never been approved by the FDA for use in pregnant women.

33. At or before FDA approval of Pristiq, Defendants knew through animal studies and post-marketing reports that Pristiq was associated with birth defects, including but not limited to malformations previously associated with another class of drugs known as Selective Serotonin Reuptake Inhibitor drugs (hereinafter "SSRI drugs").

34. Just as with SSRI drugs, Pristiq affects serotonin. Prior to the time Mother Plaintiff ingested Pristiq, Defendants knew or should have known that increased levels of serotonin have profound effects on the pre-natal development of a fetus and are associated with an increased risk of congenital birth defects.

35. Before Mother Plaintiff ingested Pristiq, Defendants knew of studies involving SSRI drugs which demonstrated that mothers exposed to increased levels of serotonin late in their pregnancy showed significantly higher rates of prematurity, poor neonatal adaptation, significantly lower mean birth weight and length, and Persistent Pulmonary Hypertension of the Newborn ("PPHN"). Chambers, Christina, Birth Outcomes in Pregnant Women Taking Fluoxentine, 335 New. Eng. 1 med. 1010-15 (1996).

36. Defendants knew, or should have known, that the use of serotonin enhancing drugs during pregnancy caused lower gestational age and birth weight, longer hospital stays, and APGAR score being significantly lower than in non-exposed infants in controls groups. Simon, Gregory, Outcome of Prenatal Antidepressant Exposure, 159 American Journal of Psychiatry 2055-2061 (2002); Oberlander, Tim, Neonatal Outcomes After Prenatal Exposure to Selective Serotonin Reuptake Inhibitor Antidepressants and Maternal Depression using Population-Based Linked Health Data, 63 Archives of General Psychiatry 898-906 (2006).

37. Defendants knew or should have known that the use of serotonin enhancing drugs, such as Pristiq, after the 20th week of pregnancy were significantly associated with PPHN. Chambers, Christina, Selective Serotonin Reuptake Inhibitors and Risk of Persistent Pulmonary Hypertension of the Newborn, 354(6) New Eng. 1 med. 579-587 (2006).

38. Defendants knew, or should have known, by 2007 that early exposure to serotonin enhancing drugs showed significant association with anencephaly (an absence of a large part of the brain or skull), craniosynostosis (closed or fused bones of infant's skull), and omphalocele (an abdominal wall defect in which the intestines and liver remain outside the abdomen in a sac because of a defect in the development of the muscles in the abdominal wall). Alwan, Sara, Use

of Selective Serotonin-Reuptake Inhibitors in Pregnancy and the Risk of Birth Defects, 356 (26) New. Eng. 1 Med. 2684-2692 (2007).

39. Furthermore, Defendants knew, or should have known, that serotonin enhancing drugs doubled the risk of septal heart defects in babies born to mothers taking such drugs. Louik, Carol, First-Trimester Use of Selective Serotonin Re-uptake Inhibitors and the Risk of Birth Defects, 356 (26) New Eng. J. Med. 2675-2683 (2007).

40. These same heart defect results were further confirmed in additional studies in 2009 and 2010 which showed that the use of serotonin enhancing drugs were associated with an increased risk of cardiac malformations. Pederson, Lars, Selective Serotonin Re-uptake Inhibitors in Pregnancy and Congenital Malformation: Population Based Cohort Study, 339 British Medical Journal b3569 (2009); Kornum, Jete, Use of Selective Serotonin Re-uptake Inhibitors during Early Pregnancy and Risk of Congenital Malformation: Updated Analysis, 2 Clinical Epidemiology 29-36 (2010).

41. These same congenital birth defect results were confirmed in relation to SNRI drugs in 2012 with the publishing of the Polen Study. This study was designed to determine whether SNRI drugs, were associated with birth defects, noting that the mechanism of action for SNRIs is similar to that of SSRIs. Based on data collected from the United States National Birth Defects Prevention Study, the study looked at 27,045 cases of reported use of the SNRI drug Effexor from one month prior to conception through the first trimester of pregnancy. The study found an association between the use of Effexor, an SNRI drug, and birth defects. Polen, Kara, Association between Reported Venlafaxine Use in Early Pregnancy and Birth Defects, national Birth Defects Prevention Study, 1997-2007, Birth Defects Research (Part A); Clinical and Molecular Teratology 00:000-000 (2012).

42. During the entire time that Pristiq has been on the market in the United States, FDA regulations have required Defendants to issue stronger warnings whenever reasonable evidence of an association between a serious risk and Pristiq existed. The regulations specifically state that a causal link need not have been proven to issue the new warnings. Further, the regulations explicitly allow Defendants to issue such a warning without prior FDA approval.

43. Prior to Mother Plaintiff's pregnancy, Defendants had the knowledge, the means and the duty to provide the medical community and the consuming public with stronger warnings regarding the association between Pristiq and congenital birth defects and other related conditions. Defendants had a duty to use all means necessary, including but not limited to labeling, continuing education, symposiums, posters, sales calls to doctors, and advertisements and promotional materials. Furthermore, based upon the alarming evidence accumulating that indicated a relationship between serotonin enhancing drugs such as Pristiq and birth defects, Defendants had a duty to conduct post-marketing studies to evaluate fully the link between Pristiq and congenital birth defects. However, Defendants breached their duties.

44. Under the FDA scheme, Pfizer and Wyeth and their predecessors knew, as New Drug Application applicants, that they must fully, truthfully and accurately disclose to the FDA data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability. The Defendants knew, or should have known, that this data and information would be relied upon by the medical community, physicians, Mother Plaintiff's physicians, Mother Plaintiff and other foreseeable prescribers and users of Pristiq once the NDA was approved.

45. Under the FDA scheme, Pfizer and Wyeth and their predecessors have a duty to ensure their warnings to the medical community are and remain accurate and adequate, to conduct safety surveillance of adverse events for the drug, to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug, and to update the label when new safety information is obtained.

46. Defendants knew, or should have known, when the New Drug Application (NDA) for Pristiq was filed, that they assumed a duty of putting an accurate label on Pristiq for the benefit of all end users of desvenlafaxine, including Mother Plaintiff.

47. Defendants knew, or should have known, that as NDA licensed manufacturers, they had the authority to unilaterally implement label strengthening changes pursuant to 21 CFR 314.70(c)(6)(iii).

48. Prior to Mother Plaintiff becoming pregnant, Pfizer and Wyeth knew, or should have known, that taking Pristiq during pregnancy poses risks to the developing fetus. Pfizer and Wyeth knew or should have known that Pristiq crosses the placenta, which could have important implications for the developing fetus.

49. Prior to Mother Plaintiff becoming pregnant, Pfizer and Wyeth knew, or should have known, that children were being born with birth defects, including heart defects and other birth defects, to women who took Pristiq during pregnancy.

50. Prior to the time that Mother Plaintiff ingested Pristiq during her pregnancy with Minor Plaintiff, Pfizer and Wyeth knew of the dangerous birth defects associated with Pristiq's use during pregnancy from the preclinical studies and the subsequent published studies confirming these risks. Pfizer and Wyeth took no action to adequately warn or remedy the risks, but instead, concealed, suppressed, and failed to disclose the dangers.

51. Pfizer and Wyeth had actual knowledge that doctors frequently prescribed Pristiq to women of childbearing potential for approved uses of the drugs and that doctors frequently prescribed Pristiq to women of childbearing potential for un-approved, or off-label, uses of the drug.

52. As a result of this knowledge Defendants knew, or should have known, that birth defects would result from the use of Pristiq by women during pregnancy. Defendants knew, or should have known, that physicians and consumers, such as the Mother Plaintiff herein, did not know or fully understand the risks associated with Pristiq.

53. Defendants failed to fully, truthfully and accurately disclose Pristiq data to the FDA, the Mother Plaintiff and the Mother Plaintiff's physicians. Defendants as a result negligently, intentionally and fraudulently misled the medical community, physicians, the Mother Plaintiff's physicians, and Mother Plaintiff about the risks to a fetus associated with the use of Pristiq during pregnancy. Defendants were aware that their failure to disclose this information to the medical community, consumers, and Plaintiffs would result in serious congenital birth defects in children born to women who consumed Pristiq during pregnancy. By failing to disclose this information, Defendants acted in willful, wanton, and reckless disregard for the safety of the consuming public, including Plaintiffs. As a direct and proximate result of this conduct, Plaintiffs suffered injury and damages.

54. Through the *Physicians' Desk Reference*, drug package inserts, patient information forms, counseling warnings, literature, marketing materials and other labeling information for Pristiq, Pfizer and Wyeth knowingly, intentionally and negligently disseminated incomplete, inaccurate, and/or misleading warnings and information about the true risks to a

fetus when Pristiq is ingested during pregnancy, which misled the medical community, physicians and Mother Plaintiff's physicians.

55. At all times material hereto, Pfizer and Wyeth knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the birth defect risks associated with use of Pristiq and that, consequently, there was a widespread tendency for physicians to prescribe Pristiq for use to women of childbearing potential. Consequently, Pfizer and Wyeth knew or should have known that the warnings and labels, including but not limited to package inserts and the *Physicians' Desk Reference* prescribing information for Pristiq, did not adequately inform physicians about the birth defect risks associated with Pristiq.

56. Defendants knew that physicians, the medical community, Mother Plaintiff, and others similarly situated relied on Pfizer and Wyeth to disclose what they knew or should have known from a prudent review of the information that it possessed or to which they had access.

57. Because of the misleading information that Pfizer and Wyeth provided to physicians, Mother Plaintiff and the FDA about the true birth defect risks associated with the use of Pristiq, and because of the failure of Pfizer and Wyeth to adequately inform physicians generally, including Mother Plaintiff's physicians, about the true birth defect risks associated with the use of Pristiq, Mother Plaintiff's physicians never informed her of any birth defect risks associated with Pristiq. Indeed, it is believed that Pfizer and Wyeth represented to physicians that Pristiq was safe for use by women of childbearing years and that the drug posed no risk of congenital birth defects to their unborn children.

58. Pfizer and Wyeth knew, or should have known, that the warnings, including but not limited to the label and package insert for Pristiq, did not disclose the risks of birth defects

from the use of Pristiq. Pfizer and Wyeth failed to use reasonable care to modify the warnings, including but not limited to the label and package insert for Pristiq, in order to warn physicians adequately about the true birth defect risks from the use of Pristiq by women who became pregnant.

59. Despite having extensive knowledge of the extreme risks associated with Pristiq, as well as the duty to properly and adequately warn foreseeable users, the Defendants never approached the FDA to alter the label for Pristiq to adequately warn of the risks of birth defects associated with the drug.

60. The current Pristiq label still does not warn doctors or patients about the increased risk of heart malformations and other birth defects seen in babies whose mothers ingested Pristiq.

61. Despite Defendants' longstanding knowledge of the danger of birth defects associated with the use of Pristiq, Defendants failed, and continue to fail, to warn and disclose to consumers that Pristiq increases the risk of heart malformations and other birth defects.

62. Defendants Pfizer and Wyeth knew of the dangerous birth defects associated with the use of Pristiq and other serotonin enhancing drugs during pregnancy from the preclinical studies and subsequent published studies confirming these risks. However, Defendants apparently have taken no action to adequately study Pristiq or did not publish the results of studies, which would have reflected this risk. Defendants failed to adequately warn or remedy the risks, but instead concealed, suppressed and failed to disclose the dangers. Even in light of numerous published studies, Defendants continue to deny these dangers and have made no effort to revise Pristiq's labeling to reflect the true birth defect risks associated with the use of Pristiq.

63. Defendants' labeling of Pristiq has never warned of the risks of birth defects associated with the use of Pristiq. From 2008-2012, Pristiq's label contained no mention of a

risk for fetal harm, let alone the true risk of birth defects associated with the use of Pristiq. Rather, the labeling from 2008-2012 included two animal studies involving pregnant rats and rabbits and surmised that when Pristiq was given to pregnant rats and rabbits there was no evidence of teratogenicity but that fetal weights did decrease in some cases. In addition, the labels from 2008-2012 stated that when Pristiq was administered to pregnant rats throughout gestation and lactation there was a decrease in pup weights and an increase in pup deaths but the cause of the deaths could not be determined. Although the labeling during this time period included a warning that neonates exposed to SNRIs or SSRIs late in the third trimester were at risk for developing complications requiring prolonged hospitalization, respiratory support, and tube feeding, the label failed to warn of PPHN, let alone the risk of birth defects associated with the use of Pristiq, despite the Defendants knowledge of such risks.

64. In 2013, Defendants modified the labeling of Pristiq to reflect, for the first time, that based upon animal studies, the use of Pristiq within the pregnant population may cause fetal harm. Interestingly, the labeling for Pristiq from 2013-present states that Pristiq should only be used during pregnancy if the potential benefits justify the potential risks to the fetus. However, the label weakens this “warning” by then cautioning that in a study of 201 women with a history of MMD, those women who discontinued antidepressant usage during pregnancy were more likely to experience a relapse of major depression. Although the term fetal harm may be found in Defendants’ current labeling for Pristiq, such language does not constitute an adequate warning of the risk of serious birth defects posed by the use of Pristiq during pregnancy.

65. Pfizer and Wyeth, and their agents, servants and employees acting in the course and scope of their employment, negligently and carelessly breached their duties to the medical

community, Mother Plaintiff's physicians, Plaintiffs and other foreseeable users similarly situated, which breaches of duty include, but are not limited to:

a) failing to ensure Pristiq warnings to the medical community, physicians, Mother Plaintiff's physicians and Mother Plaintiff were accurate and adequate, despite having extensive knowledge of the risks associated with the drug;

b) failing in its obligation to provide the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff with adequate and clinically relevant information, data and warnings regarding the adverse health risks associated with exposure to Pristiq, and/or that there existed safer and more or equally effective alternative drug products;

c) failing to conduct post market safety surveillance and report that information to the medical community, physicians, Mother Plaintiff's physicians and Mother Plaintiff;

d) failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff to the dangerous risks of Pristiq;

e) failing to continually monitor, test, and analyze data regarding safety, efficacy and the prescribing practices for Pristiq;

f) failing to review all adverse drug event information and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Pristiq to the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff;

g) failing to provide adequate post-marketing warnings and instructions after Pfizer and Wyeth knew or should have known of the significant risks of, among other things, birth defects of Pristiq;

h) failing to periodically review all medical literature regarding Pristiq and other serotonin drugs and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety resulting from the use of Pristiq;

i) failing to disclose the results of the testing and other information in its possession regarding the possibility that Pristiq can interfere with the proper development of an unborn fetus;

j) failing to warn adequately the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff of the dangers of using Pristiq during pregnancy, including the risk of birth defects;

k) representing that Pristiq was safe for use during pregnancy when, in fact, Pfizer and Wyeth knew or should have known that it was unsafe for this use and that Pristiq was associated with birth defects;

l) promoting and marketing Pristiq for use with pregnant women, despite the fact that the Defendants knew or should have known that Pristiq was associated with an increased risk of congenital abnormalities;

m) failing to independently monitor their sales of Pristiq and the medical literature, which would have alerted them to the fact that Pristiq was widely over-prescribed to women of childbearing potential as a result of inadequate warnings, including those in the package inserts and PDR for Pristiq, and as a result of the over- promotion of the drug;

n) failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling and testing of Pristiq; and/or

o) failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with Pristiq use during pregnancy.

66. As a direct and proximate result of Pfizer's and Wyeth's actions, Mother Plaintiff, and upon information and belief, Mother Plaintiff's prescribing physicians, were unaware, and could not reasonably know, or through reasonable diligence could not have reasonably known, that Pristiq exposed Mother Plaintiff to the risks and injuries alleged herein, and that those risks were the direct and proximate result of Defendants' acts and omissions.

67. As a direct and proximate result of the conduct of Defendants as described herein and as a result of the Mother Plaintiff's ingestion of Pristiq, Minor Plaintiff suffered from physical injuries, including but not limited to heart defects.

68. Minor Plaintiff's serious injuries were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, physicians, Mother Plaintiff's physicians, pharmacists and Mother Plaintiff.

69. As a direct and proximate result of the conduct of Defendants as described herein, Plaintiffs suffered costs and expenses for the Minor Plaintiff's injuries and care. These injuries and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Mother Plaintiff's physicians, pharmacists and Mother Plaintiff.

70. Plaintiffs, as result of Mother Plaintiff's ingestion of Pristiq and as a direct and proximate result of the conduct of Defendants described herein, have suffered, and will suffer in the future, great emotional pain, mental anguish and other serious injury and loss, including loss of consortium, services, support, companionship, society, love and affection. These injuries and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Mother Plaintiff's physicians, pharmacists and Mother Plaintiff.

71. The Defendants are liable to the Plaintiffs for all general, special and punitive damages, as well as delay damages, and other relief to which they are entitled to by law.

72. Defendants through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Mother Plaintiff's prescribing physician(s)the true and significant

risks associated with the use of Pristiq during pregnancy. The running of any applicable statute of limitations has been tolled by reason of Defendants fraudulent concealment.

## COUNT ONE
## Strict Product Liability – Failure to Warn

73. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

74. Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for the negligent and/or willful failure to provide adequate warnings and other clinically relevant information and data regarding the appropriate use of Pristiq to Mother Plaintiff and Mother Plaintiff's prescribing physicians.

75. Pfizer and Wyeth, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that the warnings and other clinically relevant information and data which they distributed regarding the risks of birth defects associated with the use of Pristiq were inadequate.

76. Mother Plaintiff and Mother Plaintiff's prescribing physicians, did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to her or to her physicians.

77. Defendants had a continuing duty to provide consumers, including Mother Plaintiff and her physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Pristiq as it became or could have become available to Defendants.

78. Defendants manufactured, marketed, promoted, distributed, and sold an unreasonably dangerous and defective prescription drug, Pristiq, in the stream of commerce, to

health care providers empowered to prescribe and dispense Pristiq to consumers, including Mother Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community, including Mother Plaintiff's physicians, about the risks and benefits of Pristiq, which resulted in injury to Plaintiffs.

79. Despite the fact that Defendants knew or should have known that Pristiq caused unreasonable and dangerous side effects, including birth defects, they continued to manufacture, market, promote, distribute, and sell Pristiq without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

80. Defendants knew or should have known that consumers, and Mother Plaintiff specifically, would foreseeably and needlessly suffer injury as a result of the Defendants' failures.

81. Defendants breached their duty to provide timely and adequate warnings, instructions, and information, in the following particulars:

a) failing to ensure Pristiq warnings to the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff were accurate and adequate despite having extensive knowledge of the risks associated with Pristiq;

b) failing in their obligation to provide the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff with adequate clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Pristiq, and/or that there existed safer and more or equally effective alternative drug products;

c) failing to conduct post market safety surveillance and report that information to the medical community, Mother Plaintiff's physicians, and Mother Plaintiff;

d) failing to include adequate warnings and/or providing adequate and clinically relevant information and data that would alert the medical community, Mother Plaintiff's physicians, and Mother Plaintiff to the dangerous risks of Pristiq, including, among other things, the association with birth defects;

e) failing to continually monitor, test, and analyze data regarding safety, efficacy, and prescribing practices of their marketed drug Pristiq;

f) failing to review all adverse drug event information and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Pristiq to the medical community, Mother Plaintiff's physicians, and Mother Plaintiff;

g) failing to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of, among other things, birth defects associated with the use of Pristiq;

h) failing to periodically review all medical literature regarding Pristiq and the other serotonin drugs and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy, or safety of Pristiq;

i) failing to disclose the results of the testing and other information in their possession regarding the possibility that Pristiq can interfere with the proper development of an unborn fetus;

j) failing to warn adequately the medical community, the general public, and Mother Plaintiff of the dangers of using Pristiq during pregnancy, including the risk of birth defects; and/or

k) representing that Pristiq was safe for use during pregnancy, when in fact, Manufacturing Defendants knew or should have known that Pristiq was unsafe for this use and that Pristiq use is associated with birth defects.

82. Pristiq was under the exclusive control of Defendants and was unaccompanied by appropriate instructions and warnings regarding the risk of severely injuring developing fetuses. The instructions and warnings did not accurately reflect the risk, incidence, symptoms, scope of severity of such injuries to the consumer or physicians.

83. Defendants continued to aggressively manufacture market, promote, distribute, and sell Pristiq, even after they knew or should have known of the unreasonable risks of birth defects associated with the use of Pristiq. In doing so Defendants placed their profits above their consumers' safety.

84. Pristiq was defective and unreasonably dangerous when it left the possession of Defendants in that it contained instructions and warnings insufficient to alert Mother Plaintiff and her physicians to the dangerous risks and reactions associated with its use during pregnancy. Even though Defendants knew or should have known of the risks and reactions associated with Pristiq, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product and instructions regarding how to minimize these risks.

85. Defendants had an obligation to provide Mother Plaintiff and Mother Plaintiff's physicians with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Pristiq, and/or that there existed safer and more or equally effective alternative drug products.

86. Defendants expected Pristiq to reach and it did reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by Defendants.

87. Mother Plaintiff used Pristiq as instructed and in a reasonably foreseeable manner.

88. Plaintiffs could not have discovered any defect in Pristiq through the exercise of reasonable care.

89. Defendants had an obligation to provide Mother Plaintiff and Mother Plaintiff's physicians with adequate and clinically relevant information, and data and warnings regarding

the adverse health risks associated with exposure to Pristiq, and/or that there existed safer and more or equally effective alternative drug products.

90. By failing to provide Mother Plaintiff and Mother Plaintiff's physicians with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Pristiq, and/or to inform them that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

91. As a direct and proximate result of the actions and inactions of Defendants as set forth above, Mother Plaintiff and Minor Plaintiff were exposed to Pristiq, as a result suffered, and continue to suffer, the injuries and damages, as set forth herein.

92. In the alternative, Plaintiffs plead the analogous State of Idaho statutory and/or common law claims for Failure to Warn.

93. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including but not limited to sever physical pain and suffering, mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

## COUNT TWO
## Strict Product Liability – Design Defect

94. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

95. Defendants researched, designed, developed, manufactured, labeled, marketed, promoted, supplied, distributed and sold the drug Pristiq which was defective and unreasonably

dangerous to consumers, including the Plaintiffs and placed Pristiq in the stream of commerce which was:

a) unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of birth defects;

b) defective in design and was not reasonably safe as intended to be used, subjecting Mother Plaintiff to risks which exceeded the benefits of Pristiq;

c) defective in design, making use of Pristiq more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Mother Plaintiff's and Mother Plaintiff's underlying condition;

d) defective in design in that Pristiq contained insufficient, incorrect, and defective warnings in that they failed to alert physicians, including Mother Plaintiff's physicians, and users, including Mother Plaintiff, of the risks of adverse effects; and/or

e) defective in design in that Pristiq was not safe for its intended use and was inadequately tested.

96. Defendants expected Pristiq to reach and it did reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured.

97. Defendants knew and intended that Pristiq would be used by consumers, including Mother Plaintiff, without any inspection for defects, and that Mother Plaintiff and her physicians would rely upon the representations made by Defendants on Pristiq's product labels and otherwise.

98. Prior to the manufacturing, sale, and distribution of Pristiq, Defendants knew, or were reckless in not knowing, that Pristiq was in a defective condition and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

99. Mother Plaintiff used Pristiq as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendants. Mother Plaintiff, no her prescribing physician, could not have discovered any defect therein through the exercise of due care.

100. At the time that Defendants manufactured, marketed, promoted, distributed, and sold Pristiq there existed safer and more or equally effective alternative drug products.

101. Although Defendants knew, or should have known, of the defective nature of Pristiq, they continued to design, manufacture, label, market and sell Pristiq so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendants acted with knowing, conscious and deliberate disregard of the foreseeable harm caused by Pristiq.

102. As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs were exposed to Pristiq, and as a result, suffered, and continue to suffer, injuries and damages, as set forth herein.

103. In the alternative, Plaintiffs plead the analogous State of Idaho statutory and/or common law claims for Design Defect.

104. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

## COUNT THREE
## Negligence

105. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

106. Defendants are liable to Plaintiffs pursuant to state common law and/or state Product Liability Acts due to their negligent advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling and testing Pristiq.

107. At all times mentioned herein, Defendants were under a duty to exercise reasonable care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Pristiq to ensure that use of Pristiq did not result in avoidable injuries.

108. At all times relevant to this lawsuit, Defendants owed a duty to consumers, including Mother Plaintiff and her health care providers, to assess, manage, and communicate the risks, dangers, and adverse effects of Pristiq, and to warn the medical community, consumers, Mother Plaintiff, and the Mother Plaintiff's physicians of those risks, dangers, and adverse effects.

109. Defendants' duties included, but were not limited to, carefully and properly advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Pristiq, which was placed in the stream of commerce, and providing adequate information regarding the appropriate use of Pristiq.

110. Defendants negligently and carelessly breached the above- described duties to Plaintiffs by committing negligent acts and/or omissions, including, but not limited to, the following:

a) failing to ensure Pristiq's warnings to the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff were accurate and adequate, despite having extensive knowledge of the risks associated with Pristiq;

b) failing in their obligation to provide the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Pristiq, and/or that there existed safer and more or equally effective alternative drug products;

c) failing to conduct post market safety surveillance and report that information to the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff;

d) failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff to the dangerous risks of Pristiq;

e) failing to continually monitor, test, and analyze data regarding safety, efficacy, and the prescribing practices for Pristiq;

f) failing to review all adverse drug event information and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Pristiq to the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff;

g) failing to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of, among other things, birth defects of Pristiq;

h) failing to periodically review all medical literature regarding Pristiq and other serotonin drugs and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Pristiq;

i) failing to disclose the results of the testing and other information in their possession regarding the possibility that Pristiq can interfere with the proper development of an unborn fetus;

j) failing to warn adequately the medical community, physicians, Mother Plaintiff's physicians, and Mother Plaintiff of the dangers of using Pristiq during pregnancy, including the risk of birth defects;

k) representing that Pristiq was safe for use during pregnancy when, in fact, Defendants knew or should have known that Pristiq was unsafe for this use and that Pristiq was associated with birth defects;

l) promoting and marketing Pristiq for use with pregnant women, despite the fact that the Defendants knew or should have known that Pristiq was associated with an increased risk of abnormalities;

m) promoting and marketing Pristiq as safe and effective for use with pregnant women when, in fact, it was unsafe;

n) failing to independently monitor their sales of Pristiq and the medical literature, which would have alerted them to the fact that Pristiq was widely over-prescribed to women of childbearing potential as a result of inadequate warnings in the package inserts and PDR prescribing information for Pristiq, and as a result of the over-promotion of Pristiq;

o) failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Pristiq;

p) failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with Pristiq's use;

q) failing to use ordinary care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Pristiq so as to reveal and communicate the risk of birth defects to the medical community, Mother Plaintiff's physicians, and Mother Plaintiff;

r) failing to accompany Pristiq with adequate information that would alert the medical community, Mother Plaintiff's physicians, and Mother Plaintiff to the potential adverse side effects associated with the use of Pristiq and the nature, severity, and duration of such adverse effects;

s) failing to conduct adequate post-marketing studies, non-clinical and clinical testing, and post-marketing surveillance and analyses to determine and communicate the safety profile and side effects of Pristiq;

t) continuing to promote the safety and effectiveness of Pristiq, while downplaying their risks, even after Defendants knew or should have known of the risks of Pristiq;

u) failing to provide consumers, such as Mother Plaintiff and Plaintiffs' physicians, with scientific data which indicated that Pristiq was unreasonably dangerous, and that there were no women of childbearing potential and/or pregnant women in whom the benefits of Pristiq outweighed the risks;

v) being careless and negligent in that Defendants knew or should have known that Pristiq was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

w) negligently and carelessly promoting Pristiq as safe and effective for use with women of childbearing potential and/or pregnant women when, in fact, it was unsafe;

x) negligently and carelessly over-promoting Pristiq in a zealous and unreasonable way, without regard to the potential danger that it posed to an unborn fetus; and/or

y) negligently and carelessly failing to act as a reasonably prudent drug manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

111. Although Defendants knew or should have known that Pristiq caused unreasonably dangerous side effects, including birth defects, Pfizer and Wyeth continued to market Pristiq, despite the fact there were safer and more or equally effective alternative drug products.

112. Defendants knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

113. The conduct of Defendants was a direct and proximate cause of Plaintiffs' injuries. Defendants knew or should have known that Pristiq could be dangerous and unsafe for pregnant women and the developing fetus.

114. As a direct and proximate result of the negligent acts and/or omissions of Defendants as set forth above, Plaintiffs suffered, and will continue to suffer into the future, injuries and damages, as set forth herein.

115. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

**COUNT FOUR**
**Negligent Misrepresentation**

116. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

117. Defendants are liable to Plaintiffs under the state common law and/or state Product Liability Acts for fraudulently and/or negligently misrepresenting to the public, and to Mother Plaintiff, both directly and by and through Mother Plaintiff's prescribing physicians, the safety and effectiveness of Pristiq when used by women of childbearing potential, and/or fraudulently, intentionally, and/or negligently concealing, suppressing or omitting material, adverse information regarding the safety and effectiveness of Pristiq when used by women of childbearing potential.

118. Defendants' fraudulent and/or negligent material misrepresentations and omissions regarding the safety and efficacy of Pristiq and of Pristiq's side effects, including the risk of birth defects, were communicated to Mother Plaintiff directly through promotional materials, advertising, product inserts, and the monograph provided with Mother Plaintiff's prescription with the intent that the Mother Plaintiff use Pristiq. The safety and efficacy of Pristiq was also fraudulently and/or negligently misrepresented to Mother Plaintiff's prescribing

physician(s)with the intent that such misrepresentations would cause Pristiq to be prescribed to Mother Plaintiff.

119. Defendants either knew or should have known that the material representations they were making regarding Pristiq's safety, efficacy, and side effects were false.

120. Defendants fraudulently and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce Mother Plaintiff, Mother Plaintiff's physician, and the consuming public to use and prescribe Pristiq. Defendants fraudulently and/or negligently knew or should have known that Mother Plaintiff, Mother Plaintiff's physician, and the consuming public would rely on such material misrepresentations and/or omissions in selecting Pristiq for the treatment of Mother Plaintiff. Defendants knew or should have known that Mother Plaintiff and Mother Plaintiff's physician(s)would rely upon their false representations and/or omissions.

121. Defendants made these material misrepresentations and/or omissions and actively concealed adverse information at a time when they, their agents and/or their employees knew or should have known that Pristiq had defects, dangers, and characteristics that were other than what had been represented to the medical community and the consuming public, including the Plaintiffs herein. Those misrepresentations and omissions represented to Plaintiff through Defendants labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submission further include, but are not limited to, the following particulars:

a) Defendants failed to disclose or concealed that their pre-clinical and clinical testing, and post-marketing surveillance was inadequate to determine the safety and side effects of Pristiq;

b) Defendants failed to disclose or concealed data showing that Pristiq increased the risk of birth defects;

c) Defendants failed to include adequate warnings with Pristiq about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including, without limitation, the increased risk of congenital birth defects, other injuries and death, either compared to the use of alternative drug products in its class or compared to the use of no drug products; and/or

d) Defendants concealed and continue to conceal past and present facts, evidencing an association between the use of Pristiq and dangerous side effects, including the increased risk of birth defects, from the consuming public, including Plaintiffs and Mother Plaintiff's physicians.

122. Defendants' material misrepresentations and/or active concealment, suppression, and omissions were perpetuated directly and/or indirectly by Defendants, their sales representatives, employees, distributors, agents, and/or detail persons, through the databases, printouts, monographs, and other information drafted, prepared, marketed, sold, and supplied by Defendants, their sales representatives, employees, distributors, agents, and/or detail persons.

123. Defendants' material misrepresentations and/or active concealment, suppression, and omissions constitute a continuing tort.

124. Defendants had a post-sale duty to warn physicians and Plaintiffs about the potential risks and complications associated with Pristiq they manufactured and sold in a timely manner.

125. Based on public policy, legislative enactments, and customary practices among physicians, Defendants knew, or should have known, that physicians, in weighing the potential benefits and potential risks of using Pristiq and in writing prescriptions for Pristiq, would rely upon information disseminated to them by Defendants.

126. To obtain basic information about the properties and effects of Pristiq, physicians commonly and typically consult the information disseminated by Defendants through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications,

notice letters, and regulatory submissions and rely upon that information in forming their decisions concerning the prescribing of Pristiq for their patients.

127. Through its product inserts, Defendants continued to misrepresent the potential risks and complications associated with Pristiq. Furthermore, Defendants disseminated to physicians through package inserts, the publication of a PDR monograph, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions, information concerning the properties and effects of Pristiq, with the intention that physicians would rely upon that information in their decisions concerning the prescribing of Pristiq to their patients.

128. If Mother Plaintiff and Mother Plaintiff's physicians had known the true facts concerning the risks of Pristiq, in particular, the risk of birth defects, they would not have prescribed and used Pristiq, and would have instead prescribed and used one of the safer alternatives, or no drug.

129. Mother Plaintiff's physician(s)prescribed, and Plaintiff ingested, Pristiq in reliance upon the information disseminated by Defendants through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions.

130. Defendants knew, or should have known, that patients, including Mother Plaintiff, receiving prescriptions of Pristiq written in reliance upon information Defendants disseminated as manufacturers of Pristiq would be placed in peril by serious personal injury if the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

131. Defendants owed a duty to exercise reasonable care in their dissemination of information concerning Pristiq to ensure it did not create unreasonable risk of person injuries to others, including Plaintiffs.

132. Defendants failed to exercise reasonable care to ensure that the information disseminated to physicians concerning the safety information and risks of Pristiq was accurate and not misleading and disregarded their obligation to provide truthful and accurate representations regarding the safety and risk of Pristiq to Mother Plaintiff and her physicians.

133. The representations were made by Defendants with the intent that doctors and patients, including Mother Plaintiff and her physician, would rely on them.

134. Defendants representations were made with intent of defrauding and deceiving Mother Plaintiff, her physician, other consumers, and the medical community to induce and encourage the sale of Pristiq.

135. Defendants intended that Mother Plaintiff and her physician(s)would rely on the false representations and information supplied.

136. Mother Plaintiff and her physicians' reliance upon the Defendants' material misrepresentations were justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Pristiq, while Mother Plaintiff and Mother Plaintiff's physicians were not in a position to know the true facts, and because Defendants overstated the benefits and safety of Pristiq, and concomitantly downplayed the risks of its use, including birth defects, thereby enhancing Mother Plaintiff and Mother Plaintiff's physician(s)to use Pristiq, in lieu of other, safer alternatives, or no drug at all.

137. If Mother Plaintiff and Mother Plaintiff's physicians had known the true facts concerning the risks of Pristiq, in particular, the risk of birth defects, they would not have prescribed and used Pristiq, and would have instead prescribed and used one of the safer alternatives, or no drug.

138. As a direct and proximate result of Mother Plaintiff and Mother Plaintiff's physicians' reliance on Defendants' misrepresentations and concealment concerning the risks and benefits of Pristiq, Plaintiffs suffered injuries and damages, as set forth herein.

139. In the alternative, Plaintiff pleads the analogous State of Idaho statutory and/or common law claims for Negligent Misrepresentation.

140. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

## COUNT FIVE
**Fraudulent Misrepresentation**

141. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

142. Defendants are liable to Plaintiffs

143. for fraudulently and intentionally misrepresenting to the public, and to Mother Plaintiff, both directly and by and through Mother Plaintiff's prescribing physicians, the safety and effectiveness of Pristiq when used by women of childbearing potential, and/or fraudulently, intentionally, and/or negligently concealing, suppressing or omitting material, adverse

information regarding the safety and effectiveness of Pristiq when used by women of childbearing potential.

144. Defendants' fraudulent and material misrepresentations and omissions regarding the safety and efficacy of Pristiq and of Pristiq's side effects, including the risk of birth defects, were communicated to Mother Plaintiff directly through promotional materials, advertising, product inserts, and the monograph provided with Mother Plaintiff's prescription with the intent that the Mother Plaintiff use Pristiq. The safety and efficacy of Pristiq was also fraudulently and intentionally misrepresented to Mother Plaintiff's prescribing physician(s)with the intent that such misrepresentations would cause Pristiq to be prescribed to Mother Plaintiff.

145. Defendants either knew or should have known that the material representations they were making regarding Pristiq's safety, efficacy, and side effects were false.

146. Defendants fraudulently and intentionally made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce Mother Plaintiff, Mother Plaintiff's physician, and the consuming public to use and prescribe Pristiq. Defendants fraudulently and/or negligently knew or should have known that Mother Plaintiff, Mother Plaintiff's physician, and the consuming public would rely on such material misrepresentations and/or omissions in selecting Pristiq for the treatment of Mother Plaintiff. Defendants knew or should have known that Mother Plaintiff and Mother Plaintiff's physician(s)would rely upon their false representations and/or omissions.

147. Defendants made these material misrepresentations and/or omissions and actively concealed adverse information at a time when they, their agents and/or their employees knew or should have known that Pristiq had defects, dangers, and characteristics that were other than what had been represented to the medical community and the consuming public, including the

Plaintiffs herein. Those misrepresentations and omissions represented to Plaintiff through Defendants labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submission further include, but are not limited to, the following particulars:

a) Defendants failed to disclose or concealed that their pre-clinical and clinical testing, and post-marketing surveillance was inadequate to determine the safety and side effects of Pristiq;

b) Defendants failed to disclose or concealed data showing that Pristiq increased the risk of birth defects;

c) Defendants failed to include adequate warnings with Pristiq about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including, without limitation, the increased risk of congenital birth defects, other injuries and death, either compared to the use of alternative drug products in its class or compared to the use of no drug products; and/or

d) Defendants concealed and continue to conceal past and present facts, evidencing an association between the use of Pristiq and dangerous side effects, including the increased risk of birth defects, from the consuming public, including Plaintiffs and Mother Plaintiff's physicians.

148. Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of Pristiq to consumers, including Mother Plaintiff, her physician(s)and the medical community.

149. Mother Plaintiff's physician(s)prescribed, and Mother Plaintiff ingested, Pristiq in reliance upon the information disseminated by Defendants through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions.

150. Defendants knew, or should have known, that patients, including Mother Plaintiff, receiving prescriptions of Pristiq written in reliance upon information Defendants disseminated as manufacturers of Pristiq would be placed in peril by serious personal injury if the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

151. The representations were made by Defendants with the intent that doctors and patients, including Mother Plaintiff and her physician, would rely on them.

152. Defendants representations were made with intent of defrauding and deceiving Mother Plaintiff, her physician, other consumers, and the medical community to induce and encourage the sale of Pristiq.

153. Defendants intended that Mother Plaintiff and her physician(s)would rely on the false representations and information supplied.

154. Mother Plaintiff and her physicians' reliance upon the Defendants' material misrepresentations were justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Pristiq, while Mother Plaintiff and Mother Plaintiff's physicians were not in a position to know the true facts, and because Defendants overstated the benefits and safety of Pristiq, and concomitantly downplayed the risks of its use, including birth defects, thereby enhancing Mother Plaintiff and Mother Plaintiff's physician(s)to use Pristiq, in lieu of other, safer alternatives, or no drug at all.

155. If Mother Plaintiff and Mother Plaintiff's physicians had known the true facts concerning the risks of Pristiq, in particular, the risk of birth defects, they would not have

prescribed and used Pristiq, and would have instead prescribed and used one of the safer alternatives, or no drug.

156. Defendants fraudulent representations evinced its callous, reckless, willful, wanton and/or depraved indifference to the health, safety, and welfare of consumers, including Plaintiffs.

157. As a direct and proximate consequence of Defendants actions, omissions, and misrepresentations as described herein, Plaintiffs suffered injuries and damages, as set forth herein.

158. In the alternative, Plaintiff pleads the analogous State of Idaho statutory and/or common law claims for Fraudulent Misrepresentation.

159. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

## COUNT SIX
## Breach of Express Warranty

160. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

161. Defendants expressly represented to Mother Plaintiff, her physician, other consumers and the medical community that Pristiq was safe and fit for its intended purposes, it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

162. At all times hereinafter mentioned, upon information and belief, Defendants, by directly and indirectly advertising, marketing, and promoting Pristiq for the treatment of women, including women of childbearing potential and pregnant women, and by placing Pristiq in the stream of commerce knowing that Pristiq would be prescribed to pregnant women in reliance upon the representations or omissions of Defendants, expressly warranted to all foreseeable users of Pristiq, including Mother Plaintiff and the Mother Plaintiff's physicians, that Pristiq was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus.

163. Defendants marketed Pristiq as being effective for the treatment and prevention of depression.

164. Pristiq does not conform to Defendants express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries, including but not limited to heart defects.

165. At all relevant times Pristiq did not perform safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

166. At all times relevant hereto, Mother Plaintiff and Mother Plaintiff's physicians relied upon the aforesaid express warranties by Defendants.

167. Mother Plaintiff's use of Pristiq, and Mother Plaintiff's physicians' prescribing of Pristiq was consistent with the purposes for which Defendants directly and indirectly advertised, marketed, and promoted Pristiq, and Mother Plaintiff's use of Pristiq, and Mother Plaintiff's physicians' prescribing of Pristiq was reasonably contemplated, intended, and foreseen by Defendants at the time of the distribution and sale of Pristiq by Defendants, and, therefore, Mother Plaintiff's use of Pristiq was within the scope of the above-described express warranties.

168. Pristiq reached Mother Plaintiff without substantial change in the condition in which it was manufactured and sold by Defendants.

169. As a direct and proximate result of Defendants' breach of express and implied warranties, Plaintiffs suffered injuries and damages, as set forth herein.

170. In the alternative, Plaintiffs plead the analogous State of Idaho statutory and/or common law claims for Breach of Express Warranty.

171. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

## COUNT SEVEN
### Breach of Implied Warranty

172. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

173. Defendants impliedly warranted to Mother Plaintiff, her physician, other consumers and the medical community that Pristiq was safe and fit for its intended purposes, it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

174. Defendants were aware that consumers, including Mother Plaintiff, would use Pristiq for the treatment and prevention of depression.

175. Pfizer and Wyeth impliedly warranted in manufacturing, distributing, selling, advertising, marketing, and promoting Pristiq to all foreseeable users, including Mother Plaintiff

and Mother Plaintiff's physicians, that Pristiq was safe and effective for the purposes for which it had been placed in the stream of commerce by Defendants, including for the treatment of pregnant women, and that Pristiq was reasonably safe, proper, merchantable, and fit for its intended purpose, including for the treatment of pregnant women and without significant risk to the fetus.

176. Pristiq does not conform to Defendants implied warranties because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries, including but not limited to heart defects.

177. At all relevant times Pristiq did not perform safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

178. At all times relevant hereto, Mother Plaintiff and Mother Plaintiff's physicians relied upon the aforesaid implied warranties by Defendants.

179. Mother Plaintiff's use of Pristiq, and Mother Plaintiff's physicians' prescribing of Pristiq was consistent with the purposes for which Defendants directly and indirectly advertised, marketed, and promoted Pristiq, and Mother Plaintiff's use of Pristiq, and Mother Plaintiff's physicians' prescribing of Pristiq was reasonably contemplated, intended, and foreseen by Defendants at the time of the distribution and sale of Pristiq by Defendants, and, therefore, Mother Plaintiff's use of Pristiq was within the scope of the above-described express warranties.

180. Pristiq reached Mother Plaintiff without substantial change in the condition in which it was manufactured and sold by Defendants.

181. Defendants breached their implied warrant to Mother Plaintiff in that Pristiq was not of merchantable quality or safe and fit for its intended use.

182. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs suffered injuries and damages, as set forth herein.

183. In the alternative, Plaintiffs plead the analogous State of Idaho statutory and/or common law claims for Breach of Implied Warranty.

184. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

**COUNT EIGHT**
**Unjust Enrichment**

185. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

186. As an intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase of Pristiq by Plaintiffs.

187. Defendants have voluntarily accepted and retained these profits and benefits, derived from Plaintiffs and others, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs did not receive a product of the quality, nature or fitness that had been represented by Defendants or the Plaintiffs, as reasonable consumers, expected.

188. By virtue of the conscious wrongdoing alleged herein, Defendants have been unjustly enriched at the expense of Plaintiffs, who are entitled to, in equity, and hereby seek, the disgorgement and restitution of Defendants' wrongful profits, revenue and benefits, to the extent,

and in the amount, deemed appropriate by the Court, and such other relief as this Court deems just and proper to remedy Defendants' unjust enrichment.

189. By reason of the foregoing, Defendants are liable to Plaintiffs in an amount representing their unjust enrichment, to be provided at trial.

## COUNT NINE
## Loss of Consortium and Pecuniary Loss

190. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

191. The Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts.

192. As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Mother Plaintiff and Minor Plaintiff were exposed to Pristiq and Plaintiffs have suffered, and will continue to suffer, the past and future injuries, damages, and losses as a result of the Minor Plaintiff's injuries as set forth herein.

193. The Defendants are liable to Plaintiffs for all general, special, and punitive damages, delay damages, and other relief to which they are entitled by law.

194. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

**COUNT TEN**
**Violation of Idaho Consumer Protection Act**

195. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

196. Defendants engaged in consumer-oriented, commercial conduct by selling and advertising Pristiq in Idaho and all other States and Territories within the United States.

197. Idaho has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices.

198. The Idaho Consumer Protection Act prohibits the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact in the conduct of any trade or commerce and declares such acts or practices as unlawful.

199. Defendants violated these statutes by knowingly and falsely representing that Pristiq was fit to be used for the purpose for which it was intended, when Defendants knew it was defective, dangerous, associated with birth defects, and other acts alleged herein.

200. Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and/or the knowing concealment, suppression or omission of material facts with the intent that others, like Mother Plaintiff and her physician, would rely on such concealment with the sale and advertisement of Pristiq, in violation of the Idaho consumer Protection Act.

201. Defendants engaged in the deceptive acts and practices alleged herein in order to sell Pristiq to the public, including Mother Plaintiff.

202. At all times relevant, Defendants violated the Idaho Consumer Protection Act by the use of false and misleading representations or omissions of material fact in connection with

the marketing, promotion, and sale of Pristiq. Defendants communicated the purported benefits of Pristiq while failing to disclose the serious and dangerous side effects related to the use of Pristiq with the intent that consumers, including Mother Plaintiff, and their healthcare providers would rely upon the misrepresentations and omissions and purchase and/or prescribe Pristiq.

203. As a direct and proximate result of violating the Idaho Consumer Protection Act, Defendants caused Mother Plaintiff to be prescribed and to use Pristiq, thereby causing severe injuries and damages to Minor Plaintiff and Mother Plaintiff as described herein.

204. WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against Defendants for any all damages, including, but not limited to sever physical pain and suffering; mental anguish, severe anxiety, loss of life's pleasure, loss of enjoyment of life, and loss of future earning capacity, future earnings and income, past and future medical expenses, together with interest, cost of suit and counsel fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a) For general damages in an amount to be proven at the time of trial;

b) For special damages in an amount to be proven at the time of trial;

c) For statutory damages in an amount to be proven at the time of trial;

d) For pre judgment and post judgment interest on the above general and special damages;

e) For costs of this suit and attorney's fees; and

f) All other relief this Court deems necessary, proper, and just.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly empanelled jury.

RESPECTFULLY SUBMITTED this 12th day of December, 2014.

JONES & SWARTZ PLLC

By *_/s/ Eric B. Swartz_*

ERIC B. SWARTZ

CHRISTOPHER L. COFFIN (LA Bar #27902)
JESSICA A. PEREZ (LA Bar #34024)
STAN P. BAUDIN (LA Bar #22937)
NICHOLAS R. ROCKFORTE (LA Bar #31305)
PENDLEY, BAUDIN & COFFIN, L.L.P.
P. O. Drawer 71
24110 Eden Street
Plaquemine, Louisiana 70765
Phone: 225/687-6396
Fax: 225/687-6398
ccoffin@pbclawfirm.com
jperez@pbclawfirm.com

*Attorneys for Plaintiffs*